JOHN H. LIPSCOMB, Respondent, v. HERSCHELL
F. MASTIN, Executor, etc., Appellant.

Kansas City Court of Appeals, February 21, 1910.

1. **BROKERS: Real Estate: Commission: Conflicting Claimants.**
While courts are careful to protect an agent in his claim for
commission, when he has procured a sale of property for his
principal, against the claim of a second comer, yet if the second
comer is the producing cause of the sale, and the first agent is
not, the first agent has no claim.

2. ————. Where the parties who have been brought together
by an agent reach an agreement and devise a plan for depriving
the agent of his commission, the agent is entitled to his com-
mission, even though the agent was not successful in obtaining
an offer for his principal on terms as good as those on which
the sale was finally made.

3. ————: **Agent Acting for Both Parties: When not a Bar to
Claim for Commission.** When one attempts to act as agent
for both vendor and vendee he is not ordinarily entitled to a
commission from either. But where such an agent has fully
disclosed all of such facts, and the principals consent to his so
acting, he is then entitled to his commission.

Appeal from Jackson Circuit Court.—*Hon. Walter A.
Powell,* Judge.

AFFIRMED.

*T. B. Wallace* for appellant.

(1) The property not having been sold on the
terms set forth in plaintiff's petition, he made no case.
Cole v. Armour, 154 Mo. 350; Warsaw v. McElroy, 33
Mo. App. 553; Reiger v. Biggs, 29 Mo. App. 421; Black-
well v. Adams, 28 Mo. App. 61; Lowry v. Mining Co.,
65 Mo. App. 266. (2) Plaintiff was not the procur-
ing cause of the trade that was made, and the court
should have given the declaration of law that the plain-
tiff could not recover. Gamble v. Grether, 108 Mo.

App. 340; Henkle v. Dunn, 97 Mo. App. 671; Yoder v. White, 75 Mo. App. 155. (3) The plaintiff must be the procuring cause, the *causa causans,* not one of a chain of causes. Ramsey v. West, 31 Mo. App. 676; Crowly v. Sommerville, 70 Mo. App. 376. (4) Plaintiff, by attempting to represent both sides rendered invalid any contract that he might have had with Mastin. Dennison v. Gault, 132 Mo. App. 301; Rice v. Davis, 136 Pa. St. 439, s. c. 20 Atl. Rep. 513; Green v. Lumber Co., 141 Ala. 680, s. c. 37 So. Rep. 670; Chapman v. Currie, 51 Mo. App. 40. (5) Where an agent attempts to represent both sides, he must make a full disclosure of all the facts to both parties and obtain their consent thereto. Winter v. Cary, 127 Mo. App. 601; Corbin v. O'Neill, 207 Mo. 646. (6) Where several agents have the property for sale, the one who is the procuring cause of the sale, and not the one who first introduces the person who purchases, is entitled to the commission. Whitcomb v. Bacon, 170 Mass. 479; Am. and Eng. Ency. Law (2 Ed.), vol. 4, p. 983; Mead v. Arnold, 131 Mo. App. 214; Ward v. Fletcher, 124 Mass. 224; Vreeland v. Vetterlein, 33 N. J. L. 247; White v. Marion Bank, 61 N. Y. 416; Reigdon v. Strong, 128 Ill. App. 447; Earp v. Cummins, 54 Pa. St. 394; Vatow v. McKeever, 76 Kan. 870; Liversy v. Miller, 61 Md. 336; Dryer v. Ranch, 42 How. Pr. 22; Smith v. Kimball, 193 Mass. 582; Kiper v. Yoder, 198 Pa. St. 308; Geredean v. Gibson, 122 Ga. 313.

*Joseph F. Rust* and *Sebree, Conrad & Wendorff* for respondent.

JOHNSON, J.—Plaintiff, a real estate agent in Kansas City, sued Reuben F. Mastin for a commission alleged to have been earned in the sale of a farm. Mastin died after the commencement of the suit and in due course the executor of his estate was made defendant. A jury was waived and a trial to the court resulted

in a judgment for plaintiff for $3594.45.   Defendant appealed and argues that his demurrer to the evidence should have been sustained on three grounds, viz., first, that the petition does not plead a cause of action in *quantum meruit* and the evidence, in whatsoever light considered, will sustain no other cause; second, that the evidence of plaintiff fails to show that the efforts of plaintiff were the procuring cause of the sale, and, third, that plaintiff attempted to act in the dual role of agent for each party to the transaction.

We shall dispose of the first point by saying that in the second count of the petition, plaintiff alleges and seeks to recover the reasonable value of the services. Facts pertinent to the other two points of the argument thus may be stated: Reuben F. Mastin, being old and in poor health, concluded to sell a farm he owned in Jackson county and, early in 1907, authorized plaintiff to make a sale at $100 per acre and agreed to pay him a commission of two and one-half per cent.   The farm contained 1440 acres and was expensively improved. Plaintiff tried to sell the place to various persons and in August, 1907, was informed by Dr. McClure, a real estate agent of Sedalia, that a very old and infirm man, named Clement, who owned a farm of 800 acres near Sedalia, might be induced to buy the Mastin place and that negotiations might be successfully prosecuted with L. E. Mahan, who lived in Kansas City, was a son-in-law of Clement and his agent.   Plaintiff introduced himself to Mahan, made known his business, took Mahan to the farm, introduced him to Mastin, had him shown over the place and tried to make a sale at $100 per acre.   Negotiations ensued between Mastin and Mahan which culminated in April, 1908, in the sale of the Mastin farm to Clement at $100 per acre.   In payment of the purchase price, Clement gave his farm of 800 acres in Pettis county, some residence property he owned in Sedalia and $84,500 in money.   The negotiations had become involved and difficult of solution from

two causes. First, the wide divergence of opinion respecting the value to be placed on the Pettis county farm and, second, the insistence of Mahan, resisted by Mastin, that the Sedalia residence be included in the transaction. Plaintiff labored indefatigably to bring the parties to an understanding but was unable to procure from Mahan a better offer for the Mastin farm than the conveyance of the Pettis county property and the payment of $70,000.

In February, 1908, Mahan refused to negotiate further through plaintiff, giving as his reasons that plaintiff persisted in the position that the Sedalia residence be left out of the deal, and that he was too zealous in his disparagement of the Pettis county farm. In deference to Mahan's feelings, Mastin tried to induce plaintiff to drop out of the deal, but plaintiff refused and Mastin did not attempt to revoke plaintiff's authority. He did employ other agents, i. e., Truitt & Company, and from that time on, the negotiations that resulted in the sale were conducted through Truitt & Company.

It is the contention of defendant that plaintiff had failed in his efforts to bring the parties to an accord; that he had so disgusted Mahan that if he attempted to go on with the negotiations, necessarily they would fail, and that he had expressed the intention to abandon his employment. The rule is invoked that while "courts have been careful to protect the agent who shakes the tree against the predations of a rival who would gather the fruit for himself . . . they have been just as careful to protect the second comer, whose toil has been productive against the unjust claims of the first whose efforts were impotent." [Meade v. Arnold, 131 Mo. App. 122.]

The soundness of that rule cannot be gainsaid, and if we thought the evidence sustained the conclusions of fact drawn from it by defendant, we would agree that error was committed in overruling the demurrer

to the evidence. But we do not agree with defendant in these conclusions. In the first place, there is no evidence of an abandonment of the employment by plaintiff. He did say in a letter he wrote to McClure in February that he was "ready to quit," but the context showed he had no such intention and that Mastin, Mahan and Truitt knew he intended to continue is conclusively established by their subsequent efforts to persuade or force him to withdraw.

In the second place, we think the trial judge, sitting as a trier of fact was justified in the belief that plaintiff was the procuring cause of the sale. He had brought Mahan and Mastin together, had started and conducted negotiations which, without a break, resulted in a sale, and there is room for more than a mere suspicion that plaintiff was ignored at the last, not because of impotence to close the deal, but on account of some ulterior motive of Mastin and Mahan. The reasons given by Mahan for his refusal to deal with plaintiff impress us rather as excuses than reasons, and we find ample room in the evidence for the belief that when the parties found themselves in position to reach an agreement, they put their heads together to devise a plan for depriving plaintiff of his just reward. In this view, it is immaterial that plaintiff did not succeed in obtaining an offer for his principal on terms as good as those on which the sale was made.

In Hovey v. Aaron, 133 Mo. App. 573, we said: "If defendant, while plaintiff's authority stood unrevoked, chose to sell the property, either in person or through another agent, to a customer procured by the efforts of plaintiffs, for a less price than that which plaintiffs were authorized to offer, that was his privilege, but he will not be permitted to reap the fruit of plaintiffs' labor and then deny them their just reward." To which we add that in cases such as the present where the principal has elbowed his agent out of the way and has taken charge himself of a negotia-

tion begun and prosecuted by the agent, he will not be allowed to escape liability for a commission on the pretext that finally he made a better trade than that offered the agent.

Passing to the third and last point of defendant's argument, we find that during the early stages of the negotiations, plaintiff, believing that McClure was the agent of Clement, entered into an agreement with him to pool their commissions and to divide them equally. It turned out that McClure had not been employed by Clement and was not entitled to a commission from him. We agree with defendant that if plaintiff *believed* he was to receive a commission from Clement, it was his duty to make a full disclosure of the facts to Mastin. Plaintiff testified, and the court believed the statement, that not only did he make a full disclosure of these facts to Mastin and obtain his consent to the arrangement, but stated the facts to Mahan and was informed that McClure was not Clement's agent. Courts look with disfavor on the servant who attempts to serve two masters, but when the masters themselves, with knowledge of all the facts, consent to such anomalous service, the law is satisfied.

The demurrer to the evidence was properly overruled, and since we find no error in any of the rulings of the court, it follows that the judgment must be affirmed. All concur.