Defendant herein, L.O. Brayton Company, during the month of September, 1939, undertook the cutting and clearing of a right-of-way and the erection of a light and power line through Webster Parish, Louisiana. This project traversed a tract of land belonging to A.J. Burns, Jr., who had previously granted permission therefor; and it lay immediately east of and parallel to the Minden-Shongaloo gravelled highway that likewise crosses said land and courses in a north and south direction. West of the Burns property are tracts owned by William B. Rosebery and H. Grady Slack.
In connection with the clearing operations, brush was deposited on the stumps existing along the right-of-way, and on Tuesday morning, September 19, 1939, it was fired by defendant's employees.
The following Thursday afternoon, or on September 21, 1939, the timber, underbrush and grass lying immediately west of the gravel road and opposite the brushheaps became ignited; and from this point fire spread across the lands of Burns, Rosebery and Slack.
The three named persons bring this suit to recover the property damage occasioned them by the fire. They urge separate claims, but make joint allegations of fact in the petition attributing negligence to defendant as the cause of their loss.
Additionally, the said Rosebery asks damages for timber that defendant allegedly cut and removed from his land without permission and for the asserted destruction by it of certain fences and a crop of sugar cane.
Defendant, in its answer, "denies all negligence in the premises, and denies all liability for any damage allegedly sustained by the plaintiffs." No special defense is therein urged.
The district court, after a trial of the merits, condemned defendant to pay to Rosebery the sum of $232, to Burns $200 and to Slack $27.
Defendant prosecutes this appeal. It has been answered by plaintiffs who pray for an increase in the mentioned awards.
Appellant insists that the mentioned decision is erroneous for the following reasons:
1. The evidence discloses neither negligence of defendant nor causal connection between its acts and the claimed damage.
2. The claims of Burns and Rosebery are barred by their contributory negligence.
3. The method of assessing the amount of timber damage was improper. *West Page 779 
The evidence, we think, preponderately supports the trial court's finding of fact that the damaging conflagration resulted from the fires kindled on the right-of-way on Tuesday, September 19th. These fires, it appears, were not extinguished by the employees on their leaving the scene Tuesday evening, although some efforts to do so were made, and the stumps that were beneath the brushheaps continued to burn until the timber west of the highway and opposite that point was observed Thursday afternoon as being afire. At this time the wind was blowing from the east toward the west, sparks travelled with it, and fire was raging on both sides of the gravelled road.
It is a general rule that a person who intentionally kindles a fire on his premises for a lawful purpose is liable for damages resulting therefrom if he is negligent either in starting it or in guarding against its spread. A duty devolves upon him to use ordinary or reasonable care in commencing the fire and in managing and preventing the spreading of it. This care must be commensurate with the danger reasonably to be anticipated and is dependent upon the circumstances of each particular case. 45 Corpus Juris, verbo Negligence, Section 272; 22 American Jurisprudence, verbo Fires, Sections 15 and 16; Boudreaux v. Ledet, 4 La.App. 415.
Negligence, in our opinion, attended the efforts of the employees of defendant. The right-of-way on which the numerous fires were kindled Tuesday morning coursed through lands that were heavily wooded and covered with considerable grass and small growth. A severe drought was then in progress, and necessarily the ground and its coverage were extremely dry. Late Tuesday evening the workmen left the scene and did not thereafter return. According to their testimony, water was poured on the burning stumps before their departure, thus ending the fires; the proof is conclusive, however, that no extinguishment thereof was effected. Disastrous consequences of these fires, in view of their locations and the other mentioned circumstances, could reasonably have been anticipated by the workmen; and it seems to us that care commensurate with the probable danger was not exercised. At least one or more of them should have returned the following morning for inspection purposes.
Contributory negligence on the part of Rosebery and Burns, which is urged in connection with the second assignment of error, was not pleaded in the answer; however, appellant argues that evidence relating to a defense of that character was admitted without objection during the trial of the case and that the pleadings have thereby been effectively enlarged so as to authorize consideration of such a plea. If it be assumed that an enlargement of the pleading has resulted, we think that the named plaintiffs are not shown to have been contributorily negligent.
The evidence relied on by defendant, in bar of their rights to recover, is the admission of Burns that on Wednesday morning he observed stumps afire on the right-of-way, and the testimony of Rosebery that he saw the right-of-way fires at approximately 11:30 o'clock Thursday morning, which was some few hours before the occurrence of the highway crossing; and in this connection the argument is advanced that those claimants should have made efforts to extinguish the blazes witnessed. It was not encumbent on Rosebery and Burns, as we appreciate the situation, to exert themselves as suggested. The fires at the stated times were small and confined to the right-of-way, and plaintiffs had the right to assume that defendant's employees, who had commenced them, would soon return there and take proper precautions to prevent the spreading thereof.
The case of W.D. Hughes v. Lyon Lumber Company 2 La.App. 365, cited by defense counsel, seems to be inapplicable here. The facts of the two cases are distinguishable. In that cause the conflagration was raging when plaintiff noticed it, although some distance from his property, and was being fanned by the wind. Herein only burning stumps were observed by the claimants.
Considerable difficulty has been experienced by us in our consideration of the matter of quantum. The evidence on this question is not so satisfactory as it might be, and we are favored with no written opinion of the trial judge disclosing the composition of the awards granted. The briefs of counsel and parts of the record indicate, however, that the damages allowed the several claimants were for injuries to their respective properties caused by the fire, but not including the timber growth below pulp wood size or seedlings, and additionally to Rosebery for the timber cut without his permission and for the cane destroyed. *West Page 780 
Defendant argues that the damage to the saw logs should have been fixed in accordance with the estimates given by its experts, these having been made with the aid of the Scribner-Doyle scale, which argument is not replied to by plaintiffs; and plaintiffs contend, under their answer to the appeal, that the court erred in disallowing damages for destruction of their seedling timber, to which contention defendant makes no reply.
In support of the mentioned position of defendant, it cites Section 1 of Act 263 of 1918: "What is known as the `Scribner-Doyle' rule or scale shall be the standard rule for the measurement of sawlogs in this State." We find it unnecessary to pass upon the applicability of this statutory provision to the instant case, for it does not clearly appear that the use of the Scribner-Doyle scale by the defense experts was responsible for the considerable difference in measurement existing between their estimates and those given by the experts of plaintiffs. All were timber estimators of much experience, and each did his work independently of the others; and more than likely their disagreement as to which trees should be considered to be damaged and estimated caused the wide divergence of views. In fact there was a difference of opinion in this respect between defendant's two experts.
The trial judge obviously accepted the estimates furnished by plaintiffs' witnesses, for they seem to support the awards made; and we cannot say that error was thereby committed.
Plaintiffs complain of the court's holding that damages for the seedlings destroyed are not recoverable, and with reference to the complaint the following is said in the brief of their counsel: "In this holding, we submit the court was in serious error and for that reason we have answered the appeal herein asking that the awards be increased to the amounts sued for. On the trial of the case it was proven by Mr. Jack Crane, a timber cruiser, buyer and forester of years experience, that there was approximately fifty acres of Mr. Rosebery's young timber totally destroyed on which there were approximately four hundred stems (small trees from seedlings to below pulp-wood size) per acre; that there were approximately eighty acres of young timber running approximately five hundred stems per acre on the Burns' tract which were totally destroyed; that there was approximately eighteen acres of young timber running approximately six hundred stems per acre on the Slack tract which was totally destroyed. In this testimony he was fully corroborated by Mr. A.L. Coffee, a timber estimator and cruiser of years experience."
Recovery for the destruction of seedlings by fire is, in our opinion, supported by Section 5 of Act No. 90 of 1922, and by Ellis v. New Orleans Great Northern Railroad Company,169 La. 797, 126 So. 64. The mentioned statutory provisions read: "That nothing in this Act shall be construed as affecting the right to damages. The liability of persons or corporations for all damages shall include the injury to young tree growth resulting from fires. The damage to such young growth shall be calculated as the expense of artificially planting and cultivating such small growth to the point of development at the time when the fire occurred."
The proof in the record, however, is not sufficiently definite to permit a determination of the damage sustained by the seedlings of plaintiffs. As we appreciate the testimony of the expert Jack Crane, referred to in the above-quoted extract from the brief of plaintiffs' counsel, his estimate regarding the number of stems per acre on each tract included not only the seedlings but also trees furnishing saw logs and pulp wood. The witness Coffee fixed no specific number or quantity. Under the circumstances, we think that plaintiffs' demands respecting this item should be non-suited.
For the reasons assigned, the judgment insofar as it rejected plaintiffs' demands for destruction of their seedling timber is reversed and set aside, and a non-suit of those demands is hereby decreed; in all other respects the judgment is affirmed.
Costs of both courts shall be paid by defendant. *West Page 781