ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1915.

*(Continued from Volume 190.)*

## AMELIA DANIELS, Respondent, v. FREDERICK W. GOEKE et al., Appeallants.

St. Louis Court of Appeals. Argued and Submitted April 6, 1915. Opinion Filed May 4, 1915.

1. **EVIDENCE: Photographs: Sketches.** In an action for the death of an employee from moving shafting in a mill, which was destroyed by fire after the injury, a sketch made from a photograph of the interior of the mill, showing the position of the shafting and the immediate surroundings, which was identified by witnesses as a fairly accurate representation, and was used merely to illustrate their descriptions, and not as independent evidence, was properly admitted in evidence, notwithstanding the fact that the photograph was neither produced nor accounted for.

2. **WITNESSES: Competency: Transactions with Deceased Person: Disinterested Witness.** The inhibition in Sec. 6354, R. S. 1909, against the serving party to a contract or cause of action, or one claiming under him, testifying, when the other party is dead, applies only to the parties to the contract or cause of action, or those claiming under them, and their

agents and attorneys; and hence, in an action for the death of an employee in a mill, from injuries sustained from moving shafting, it was proper to permit a State factory inspector to testify concerning a conversation he had with the superintendent of the mill, since deceased, relative to the shafting, since the factory inspector was in no way interested in the action.

3. **MASTER AND SERVANT: Injury to Servant: Placing Belt on Moving Machinery: Contributory Negligence.** An employee in a mill, who was killed by being caught while attempting to replace a belt on a pulley, was not guilty of contributory negligence as a matter of law in attempting to replace the belt without stopping the machinery, since that is the method ordinarily employed and it is almost impossible to put a belt on a dead pulley.

4. ————: ————: ————: ————. An employee in a mill, who was killed by being caught while attempting to replace a belt on a pulley, was not guilty of contributory negligence as a matter of law in stepping over the belt, since it did not appear that he could have got around it or under it, and it was necessary for him, in the course of his ordinary duties, to adjust it.

5. ————: **Injury to Foreman: Liability of Master.** Although, to a limited extent, a foreman is considered a vice-principal, he may nevertheless recover for injuries resulting from defective appliances furnished by the master that are not reasonably safe.

6. ————: **Injury to Servant: Choice of Method: Contributory Negligence.** An employee in a mill, who was killed while attempting to replace a belt on a pulley, was not negligent as a matter of law, on the ground that he attempted to replace the belt while the machinery was moving, instead of stopping it, and thus choosing a dangerous, rather than a safe, way to do the work, since where there are two ways of doing the work, one dangerous and the other not so hazardous, both furnished by the employer with the intention that the employee may use either, at his discretion, the employer cannot defeat a recovery for injuries to the employee on the ground that he chose the more dangerous method.

7. ————: ————: **Unguarded Machinery: Question for Jury.** In an action for injuries sustained by a servant from moving shafting in a manufacturing establishment, it is a question for a jury, under Sec. 7828, R. S. 1909, whether the machinery in question could have been safely and securely guarded without materially interfering with its efficiency.

8. ————: ————: ————: **Evidence.** In an action for the death of an employee in a mill from an injury sustained by

being caught by a set screw on moving shafting, the fact that the State factory inspector had called the employer's attention to the screw, and had cautioned him that it was dangerous and should be guarded, several weeks before the injury, while of no force as imposing liability on the employer or as an official notice fixing liability, was of probative value, as tending to show knowledge of the danger by the employer.

9. ———: ———: ———. In an action for the death of an employee in a mill from an injury sustained by being caught by a set screw on moving shafting, evidence *held* sufficient to warrant submission to the jury of the question of whether the set screw could have been or should have been guarded, as required by Sec. 7828, R. S. 1909.

10. ———: ———: ———: **Sufficiency of Guard.** A grain conveyer a few feet in front of shafting, under which an employee had to go to reach the shafting, was not a guard of the shafting, satisfying the requirements of Sec. 7828, R. S. 1909.

Appeal from St. Louis City Circuit Court—*Hon. Thomas C. Hennings,* Judge.

AFFIRMED.

*Ellerbe & Brokaw* for appellants; *Lubke & Lubke* of counsel.

(1) The court erred in admitting over the defendants' objection plaintiff's exhibit B, a drawing made from a photograph not offered in evidence. It was not shown when the photograph was taken or when the drawing was made, nor was any one able to state that the drawing was an accurate picture of the coupling and set screws. (2) The court erred in admitting over the objection of the defendants the alleged conversation between the witness Thomas J. Schueddig and the defendants' former superintendent Heitzman. Heitzman being dead Schueddig was an incompetent witness under the proviso contained in section 6354, R. S. 1909, to any conversations or statements passing between him and Heitzman. Carroll v. Railroad, 157 Mo. App. 247; Leavea v. Railroad, 171 Mo.

App. 24; Taylor v. George, 176 Mo. App. 215. (3) The deceased in attempting to replace the belt on the revolving shaft was not obeying any order of the master and was of his own volition negligently adopting a dangerous rather than a simple and absolutely safe method. He was the *alter ego* the vice-principal, in sole charge of the plant, with authority to pursue any course of action or method he chose. The master should not be held liable for his negligence or his mistake in judgment in selecting an unsafe manner; and the fact that he or others had done the same thing did not relieve him from his responsibility for the results of his voluntary choice of the more dangerous manner. By walking twenty feet and giving the order to shut down the machinery, as he ought to have done, he could have replaced the belt in perfect safety. Smith v. Forrester-Nace Box Co., 193 Mo. 715; Doerr v. Brewing Ass'n, 176 Mo. 547; Trainer v. Mining Co., 243 Mo. 359; Dressie, Admr., v. Railroad, 145 Mo. App. 163; Riegel v. Biscuit Co., 169 Mo. App. 513; Breashears v. Iron Works Co., 171 Mo. App. 507. (4) The court erred in not directing a verdict for the defendants, as the evidence conclusively showed that the shafting, coupling and set screws were so guarded that they were not dangerous to the deceased or any of the defendants' employees while engaged in the performance of their ordinary duties. At the time of his death the deceased was not engaged in an ordinary, but in an extraordinary and unusual duty. If the conveyer box on its supports was not a guard, still the shafting was so located that it was not dangerous to the deceased or other of the defendants' employees while any of them were engaged in the performance of their ordinary duties, and therefore the defendants were not required to guard it by section 7828, R. S. 1909. Lang v. Bolt & Nut Co., 131 Mo. App. 146; Strode v. Columbia Box Co., 124 Mo. App. 511; Strode v. Columbia Box Co., 250 Mo. 695; Simpson v. Witte

Iron Works, 155 S. W. 813; Simpson v. Witte Iron Works, 249 Mo. 376; Austin v. Shoe Co., 176 Mo. App. 572; Saling v. American Chicle Co., 117 Mo. App. 374.

*Earl M. Pirkey* for respondent.

(1) In order for an appellate court to pass on the admissiblity and character of evidence, the evidence in question even if real must be before the appellate court. Phelps v. Conqueror Zinc Co., 218 Mo. 581; Scott v. Railroad, 158 Mo. App. 625. (2) (a) To disqualify a witness on the ground that a party to the contract or cause of action is dead, the witness must both be interested and a party to the contract or cause of action with the deceased person. Campbell, Admr., v. Hayden, 164 Mo. App. 252; Investment Co. v. Lead Co., 251 Mo. 741. (b) Where a widow sues an individual for the death of her husband, the cause of action on trial did not accrue until after his death, and all witnesses to what was said and done before his death are competent. Entwistle v. Feighner, 60 Mo. 214. (c) Hearsay testimony carries no weight or probative force whatever, whether objected to or not. Childers v. Pickenpaugh, 219 Mo. 436. (3) (a) A foreman may recover in like manner as an ordinary servant, for injuries caused by the negligence of the master. Nichols v. Plate Glass Co., 126 Mo. 66. (b) If there are two ways for a servant to do an act, one more dangerous than the other, both of which are furnished by the master with the intention that the employee may use either, he is not negligent in choosing the more hazardous course. Hutchinson v. Safety Gate Co., 247 Mo. 116. (c) Even where a servant of his own free will chooses an unsafe way when a safer way is at hand, he can recover, unless the way he chose is so glaringly dangerous that no prudent person would have chosen it. Boehm v. General Electric Co., 179 Mo. App. 671; Rhea v. Railroad, 171 Mo. App.

178; Railroad v. Thompson, 199 Fed. 395; American Car and Fdry. Co. v. Ruckle, 200 Fed. 47. (d) The statute requires machinery to be guarded when it is so placed in a factory that its normal operation would injure any employee who should approach near enough to be caught by its force or subjected to its activity. Simpson v. Witte Iron Works Co., 249 Mo. 389.

REYNOLDS, P. J.—At the time of the accident here involved, defendants, partners, owned and operated a mill for grinding grain of various kinds, manufacturing it into feed. Daniels, the husband of plaintiff, was night foreman. On the night of September 29, 1911, Daniels discovered that a belt had slipped from its pulley and he climbed over a shafting for the purpose of adjusting the belt, the machinery in operation and the shaft, pulley and belting moving at the time. He was accompanied by a laborer who carried a lighted lantern. This shafting was near the south wall of the building, about eighteen inches from it and about two feet above the floor. On the far side of it, toward the interior of the building, was a wooden grain conveyor some two or three feet from the shafting, and raised four or more feet above the floor. Daniels was in charge of the plant that night. The laborer was named Zeva. Daniels stood for awhile on the outside of the shafting. He then got between the shafting and the wall and after making three or four unsuccessful efforts to put the belt back on the revolving pulley, he was stepping over the shafting when a leg of his trousers was caught in a set screw in the moving shaft and he was whirled to his death.

The plaintiff, his widow, brought this action for damages resulting from this death, charging that the defendants had negligently failed to sufficiently light the establishment at and near the coupling and shafting and also had negligently failed to guard the set screws, which were in the coupling or shafting, and

which extended such a distance from the surface of the coupling that there was probable danger of their catching the person and clothing of anyone at or near the coupling. The charge of negligence as to insufficient light was taken from the jury so that the cause proceeded on the assigned negligence in failing to guard the set screw in the shafting, it being claimed that failure to guard it was a violation of section 7828, Revised Statutes 1909, and that Daniels was caught by it while in the performance of the ordinary duties of his employment.

After a general denial, defendants pleaded contributory negligence in that Daniels was familiar with the premises; that he crawled under a guard provided by defendants over the machinery and appliances and had negligently placed his leg and body over a shaft while the same was revolving and negligently attempted to place on the pulley wheel attached to the shafting while it was in motion, the belting which had come off, without first stopping it, as it was his duty to do, as charged, and that he had negligently allowed his leg and trousers to come in contact with and be caught in the revolving shaft.

The answer further attacks section 7828, Revised Statutes 1909, of our State as unconstitutional. This latter defense is not open to our consideration, indeed is not insisted on here by learned counsel for appellants.

The guard referred to as one under which Daniels was alleged to have passed and which it is alleged was provided by the defendants over the machinery and appliances, is the grain conveyor we have referred to.

From a verdict in favor of plaintiff, defendants have duly perfected their appeal to this court.

There are four assignments of error made before us.

The first is to alleged error of the court in admitting, over defendants' objection, an exhibit consisting

of a drawing made from a photograph not offered in evidence, it being charged that it did not appear by the evidence when the photograph was taken or when the drawing was made, nor that anyone was able to state that the drawing was an accurate representation of the coupling and set screws. Our court recently held in Lauff v. J. Kennard & Sons Carpet Co., 186 Mo. App. 123, 171 S. W. 986, that photographs, if properly identified, may be introduced in evidence. The mill at which this accident occurred caught fire and was burned down after the accident, but it appears that before that a photograph had been taken of that part of the interior that contained this shafting. While the photograph itself was neither produced nor accounted for on the trial of the case, what was claimed to be a sketch from that photograph of this shafting, showing its position and immediate surroundings, and the set screw, was in evidence and is the exhibit referred to. It was identified by witnesses as a fairly accurate representation of the *locus in quo*. We see no error in the admission of this in evidence, as the witnesses testifying from it were able to give the court and jury an understandable description of the machinery involved and its situation. In itself it was no evidence and was not so used, but served the purpose of making the verbal descriptions more intelligible. It is not claimed that it was in any respect misleading. We see no error in the action of the court in its admission in evidence.

The second assignment of error is to the action of the court in admitting a conversation between a witness who was a deputy factory inspector and a superintendent for defendants, the latter since dying. This inspector testified that he had called the attention of the superintendent to this set screw and told him it should be covered or countersunk, and that this superintendent told him he would have it remedied. This

conversation took place some three weeks before this accident.

Learned counsel for appellants rely upon Carroll v. United Rys. Co., 157 Mo. App. 247, 137 S. W. 303; Leavea v. Southern Ry. Co., 171 Mo. App. 24, 153 S. W. 500, and Taylor v. George, 176 Mo. App. 215, 161 S. W. 1187, in support of their objection, claiming that under the provisions of section 6354, Revised Statutes 1909, as interpreted by these decisions, the superintendent being dead, this deputy factory inspector was an incompetent witness. Section 6354 and its predecessors, as found in the various revisions of our statute, have been frequently before our Supreme Court and the various Courts of Appeals for consideration and construction. The last case in which this section was construed by our Supreme Court, and to which our attention has been called, is that of Ham & Ham Lead & Zinc Co. v. Catherine Lead Co., 251 Mo. 721, 158 S. W. 369. There our Supreme Court has said that in order to render a witness incompetent he must both be interested and a party to the contract or cause of action which was made with the deceased person. Nothing whatever contrary to this is to be found in any of the cases above cited from the appellate courts. While it is true that in all of them, as stated very fully in Carroll v. United Rys. Co., supra, it is said that the reason of the rule underlying the statute is that when the mouth of one is closed by death, the other should not be heard to speak, it is distinctly held in all of them, and in every case of which we have any notice or knowledge in our State, that this rule applies to the parties to the contract or to the action; broadened, it is true, to take in their agents and attorneys, but always limiting it, as the statute does, to the parties, or the agent and attorney of the parties, to the contract or cause of action. Our lawmakers have never seen proper to extend this statute so as to close the mouth of a witness to conversations and transac-

tions with another, that other being dead, when the witness himself, or the dead one, is neither a party to the contract or cause of action. We hold this assignment of error untenable.

The third assignment of error is that plaintiff was guilty of negligence as a matter of law and that therefore the court should have directed a verdict for defendants. Reading over the testimony in the case, as presented to us by counsel for appellants, we cannot say as a matter of law that the decedent was guilty of contributory negligence. The question of fact on that was very elaborately and carefully submitted to the jury by instructions given at the instance of defendants, appellants here, and with these instructions and under the evidence we see no reason to disturb that verdict.

It is argued by the learned counsel for appellants in support of their claim of contributory negligence, that decedent, in attempting to replace the belting on the revolving shafting was not obeying any order of the employer and was, of his own volition, negligently adopting a dangerous rather than a simple and absolutely safe method; that it was negligent for him not to have stopped the machinery, which he could have done by walking a few feet and signaling the engineer, before he attempted to put on the belting which had slipped from the pulley. We are unable to see that this established contributory negligence as a matter of law. Answering the point that the pulley should have been stopped before decedent attempted to put on the belting, counsel for respondent in his oral argument before us very aptly, as we think, urged that the common, ordinary and in fact almost necessary way of adjusting belting is to do so when the pulleys are revolving; that it is almost impossible to put a tight belt on a dead pulley.

Nor do we see contributory negligence as a matter of law on the part of the decedent in stepping

over or attempting to step over this shafting. It does not appear that he could get around it or under it, and the evidence tends to show that it was necessary for him, in the course of his ordinary duties and employment, to adjust the belting. To do so, or having done so, he necessarily stepped over this moving shafting and was caught.

It is urged that because Daniels was a foreman and, in a way, a vice-principal, there can be no recovery.

In Nichols v. Crystal Plate Glass Co., 126 Mo. 55, 28 S. W. 991, Judge BLACK, speaking for our Supreme Court, has said (1. c. 66):

"There is no doubt that the plaintiff was the foreman of the blacksmith shop, and as such had charge of the various jobs of work sent to him. He also had control of his helpers. Though a foreman, and to a limited extent the defendant's vice-principal, still he was the servant of the defendant. The fact that he was such foreman does not defeat his action to recover for injuries sustained by reason of defective appliances, unless it was his duty to see that the appliances were kept in order, and we have seen that this was a question of fact in this case and not one of law."

Daniels, even as night foreman, was working with the appliances which his employers furnished him. We know of no case in which it has been held that because of his position as foreman, he lost his right to look to his employer for reasonably safe appliances, or here, for appliances guarded as required by law, with and about which to do his work.

It is further argued in support of the contention that contributory negligence here appears as a matter of law, that decedent had a safe way to do this work of putting on this belting; that he might have stopped the engine, stopped the running of the pulley and so operated in safety to himself. In addition to what we have before said about the impracticability of put-

ting a belting on a dead pulley, we have it distinctly announced in Hutchinson v. Richmond Safety Gate Co., 247 Mo. 71, l. c. 116, 152 S. W. 52, as a rule settled by repeated decisions of our Supreme Court, "that where there are two ways by which the servant may do a particular thing, one dangerous and the other not so hazardous, both, however, furnished by the master, with the intention that the employee may at his discrimination use either, then it does not lie in the mouth of the former to say to the latter that he cannot recover because he chose the more hazardous way."

We do not think this third assignment of error is tenable.

This brings us to the real and controlling point in the case, and that is the fourth assignment of error made by learned counsel for appellants, to the effect that appellants had complied with section 7828, Revised Statutes 1909, in so guarding the shafting that it was not dangerous to employees while engaged in the performance of their ordinary duties; that if not guarded within the meaning of that statute the shafting was so located that it was not dangerous to employees while engaged in their ordinary work and hence defendants were not required to guard it. On these two propositions really hinges the determination of this case.

Our Supreme Court has held in several cases, particularly in Huss v. Heydt Bakery Co., 210 Mo. 44, 108 S. W. 63, commencing at page 50, that the question of whether the machinery in question could have been safely and securely guarded without materially interfering with the efficient working of the machinery, is a question of fact for the determination of the jury. This point in the Huss case is reaffirmed by our Supreme Court in Simpson v. Witte Iron Works Co., 249 Mo. 376, l. c. 386, 155 S. W. 810, and is dwelt upon by Judge LAMM in his dissenting opinion in that case.

In the case at bar the evidence of the assistant factory inspector, before referred to, introduced as a witness, not only to prove the conversation, but as an expert in matters of this kind, is distinct that this set screw could have been countersunk, or that a boxing could have been put over it in such a way as to prevent this accident and remove danger from the projecting screw head. That was substantial evidence for the consideration of the jury on that point and there is no real contradiction of it. This witness further testified, and this is the testimony which appellants claim was improperly admitted, as we have above noted, that he had called the attention of the superintendent to the presence of this screw head or set screw and cautioned him that it was dangerous and should be guarded. While our Supreme Court has held in the Simpson case, supra, as well as in other cases, that notice by the factory inspector of the necessity of guarding machinery in whole or in part is not a prerequisite to the right to maintain a civil action, that testimony is significant in this case and here of importance, in that it brings home a knowledge to the employers, owners and operators of the machinery, of the danger attendant upon leaving this particular piece or part of the machinery unguarded. So that while here of no force as imposing liability, and as an official notice fixing liability, it is of probative value as tending to show notice and knowledge on the part of the owners of the present danger of leaving this shafting and this set screw unguarded.

Our Supreme Court and this court, have, in many cases, considered this section 7828 of our statutes and have construed it as requiring machinery of like character to be guarded. [See Austin v. Bluff City Shoe Co., 176 Mo. App. 546, 158 S. W. 709, and the more recent case of Turner v. Tyler Land & Timber Co., 188 Mo. App. 481, 174 S. W. 184, for a collection of the most recent and leading cases on this. In the

light of what we have said and the cases we have cited in these cases, we do not think we can add anything new or of service. We refer to them.

In brief, we here hold that, under the evidence in this case, this set screw was a part of the machinery which could have been and which should have been guarded, and that for the lack of its being guarded the husband of respondent came to his death while engaged in his ordinary duties, he then being employed in and about the establishment of appellants. His duty there was to see that the machinery was in order; that it operated; that the belting and shafting were in place. So he came to his death while in the discharge of his ordinary duties. There was no guard or safety device of any kind on or immediately about this shafting. The grain conveyor referred to was some few feet away from the shafting. To get to the shafting the workman was obliged to stoop under this conveyor, but when inside of it, between it and the shafting, there was no protection of any kind against the shafting itself or its screws or projections. As the jury found, here is where safety appliances were required; here they could have been placed without interfering with the working of the shafting. Their absence was the direct cause of the fatal accident, as the jury must have found.

This covers all the assignments of error which are made by the learned counsel for appellants.

Examining the abstract of the testimony in the case, considering the instructions which were given on behalf of defendants, and the ruling of the court in the admission of evidence, we find no reversible error.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.